UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Janine Fraser

      v.

Select Portfolio Services Inc.

Civil No. 23-cv-446-LM-AJ
Opinion No. 2026 DNH 023 P

**O R D E R**

Plaintiff Janine Fraser ("Fraser") brings this lawsuit against her mortgage loan servicer, Select Portfolio Services Inc. ("SPS"), alleging that SPS violated various provisions of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605, and its implementing regulations, Regulation X, 12 C.F.R. § 1024 et seq. Presently before the court is SPS's motion for summary judgment. Doc. no. 24. Fraser objects. Doc. no. 25. For the following reasons, SPS's motion (doc. no. 24) is granted in part and denied in part.

## STANDARD OF REVIEW

A movant is entitled to summary judgment where he "shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if "the evidence is such 'that a reasonable jury could resolve the point in favor of the nonmoving party.'" Quintana-Dieppa v. Dep't of Army, 130 F.4th 1, 7 (1st Cir. 2025) (quoting Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018)). A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." Id. (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir.

2017)). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Minturn v. Monrad, 64 F.4th 9, 14 (1st Cir. 2023).

## BACKGROUND[1]

On June 13, 2006, Fraser and her then-husband Martin Fraser ("Martin") purchased a home in Loudon, New Hampshire ("the Property").[2] On that date, Martin signed a $276,000.00 note, secured by a mortgage on the Property. Both Martin and Fraser signed the mortgage document, but only Martin signed the note. In 2018, SPS became the servicer on the loan.

1.    September 2019: Fraser Files for Divorce and Discovers Mortgage in Arrears

On September 13, 2019, Fraser filed for divorce against Martin in the Family Division of the New Hampshire Circuit Court ("Circuit Court"). The divorce was contentious, and Martin refused throughout all relevant times to communicate with Fraser about the status of the mortgage and loan. Martin not only refused to communicate with Fraser, but he also refused to communicate with the Circuit Court throughout the divorce. See doc. no. 19-3.

At some point after filing for divorce, Fraser discovered that the mortgage was in arrears.[3] SPS would not, however, share any information about the loan with

---

[1] The facts are recited in the light most favorable to Fraser, the nonmovant.

[2] The court refers to Martin Fraser by his first name to avoid confusion with the plaintiff.

[3] Martin received a Notice of Default dated October 23, 2019. Doc. no. 24-13.

Fraser because she was not a signatory on the note and not therefore a "borrower."[4] As early as August 7, 2020, Fraser filed (in her divorce case) a motion to compel Martin to execute a release to authorize her to receive information from SPS. In the motion, Fraser stated her belief that the Property's loan was in default, but that she needed Martin's authorization to make payments. The motion explained that Fraser wished to communicate with SPS to discuss the default and potential avenues to avoid foreclosure and the eviction of herself and her four children. The Circuit Court granted Fraser's motion and ordered Martin to execute a release and to provide information necessary to authorize SPS to communicate with Fraser. Martin apparently refused to comply with the Circuit Court's order, and Fraser filed a motion for contempt on February 17, 2021.[5]

Still unable to obtain Martin's assistance, Fraser spoke with SPS on December 8, 2021, and was told there were "no options available" to her. Doc. no. 24-9 at 4. Frustrated by the manner in which SPS was handling her inquiries, Fraser wrote to SPS and "raised several claims regarding fraud and legal violations." Id. at 5. Fraser's letter also raised concerns about Covid, requested forbearance of the mortgage pursuant to the CARES Act, and asked about options for loss mitigation. SPS received that letter on January 31, 2022. That same date,

---

[4] Although the earliest communications from Fraser to SPS are not in the record, it is undisputed that Fraser's earliest (2020-2021) attempts to obtain information from SPS were not successful.

[5] The Circuit Court held a contempt hearing on May 11, 2021. The record does not reveal what occurred at this hearing.

SPS wrote to Martin and informed him that SPS had approved a six-month Temporary Hardship Forbearance Plan (effective January 1, 2022).

In a letter to Fraser (and copied to Martin) dated March 2, 2022, SPS referenced Fraser's January 2022 letter of complaint and denied any wrongdoing. SPS informed Fraser that—in response to her request—SPS had approved the 6-month forbearance agreement. See id. Under a heading in the letter entitled, "What You Need to Do," SPS informed Fraser that she could "cure the amount outstanding" on the loan and thereby "fully reinstate" it. Id. at 4.

2.      May 2022: Circuit Court Awards Fraser Title to the Property in the Divorce

On May 11, 2022, the Circuit Court entered a final decree in the divorce proceeding in which it awarded Fraser title to the Property. Fraser subsequently wrote to SPS in an attempt to get it to recognize her ownership interest—so she could begin the process of making headway on her monthly mortgage payments and avoid foreclosure. In a letter to Fraser dated June 10, 2022, SPS "requested information" from her to confirm her interest in the Property. According to Fraser, she was still not clear about what more SPS needed from her. Meanwhile, on August 8, 2022, the Circuit Court issued a notice of final judgment of divorce to the parties, which Martin appealed to the New Hampshire Supreme Court. Fraser wrote again to SPS and inquired about access to information on the loan. SPS received that letter on August 29, 2022.

In response, SPS wrote a letter to Fraser dated September 12, 2022. See doc. no. 24-10 at 4-5. In its September 12 letter, SPS did not mention any prior

correspondence with Fraser—other than Fraser's letter which it had received on August 29. The September 12 letter contains no mention of the divorce decree.[6] It appears to be a form letter and indicates that SPS "will need to gather some more information before we can release account details you have requested." Id. at 4. The letter contains a list of seven (7) exemplar documents that Fraser could provide to "establish[ ] the identity and legal interest of the successor in interest to the property." Id. One of the exemplar documents is "a copy of the relevant deed showing a current interest in the property." Id. Fraser assumed that SPS, as the loan servicer, already possessed a copy of the deed, so she was not sure what SPS still needed from her.

On October 6, 2022, Fraser learned that SPS's attorney had scheduled a foreclosure sale for November 30. On October 25, SPS wrote to Fraser informing her that it would postpone the sale. On October 31, having narrowly avoided foreclosure, Fraser wrote to SPS again. In this letter, Fraser explained to SPS that she understood that SPS still needed information from her to confirm her interest in the Property—but that SPS was not making clear to her precisely what information SPS still needed. Fraser attached to her October 31 letter a copy of the final decree of divorce and alerted SPS to the precise section of the decree that awarded the Property to her. In her October 31 letter, Fraser wrote: "I have been awarded by the

---

[6] While the record does not contain Fraser's letter to SPS (a letter that SPS received on August 29, 2022), it is unlikely that Fraser did not notify SPS about the Circuit Court's order awarding ownership of the Property to her. As noted, the Circuit Court issued its order on August 8, 2022.

Court the subject property. Please confirm if any other information is required to prove that I have an interest in the property." Doc. no. 19-1 at 7.

3.      December 2, 2022: SPS Responds to Complaint that Fraser Filed with N.H. Banking Department

Frustrated with SPS, Fraser filed a complaint with the New Hampshire Banking Department in November 2022. SPS responded to her complaint in a letter to the Banking Department dated December 2, 2022.[7] SPS informed the Banking Department that it had "completed a full review of . . . the account." Doc. no. 24-11 at 2. Despite having received from Fraser the information about her divorce decree and her ownership of the Property, SPS stated in this letter: "Please be advised that while Ms. Fraser signed the Mortgage, she did not sign the Note and is not considered authorized to receive all requested information regarding the mortgage account according to New Hampshire statutes. We have provided the information pertinent to the Assumption Review pursuant to the Divorce Decree, and the foreclosure status." Id. This December 2 letter also contains information under two headnotes: "Loss Mitigation" and "Foreclosure." Id. at 2-3. And it states that—on November 23, 2022—SPS "initiated," what it called, an "Assumption and Successor in Interest review." Id. at 2.

Although Fraser had already sent SPS a copy of the final divorce decree, SPS stated in this December 2 letter that "we need the divorce decree that has been

---

[7] Fraser disputes whether she received a copy of the December 2 letter. The letter is not addressed to her; it is addressed to the N.H. Banking Department. It indicates that she and Martin were copied on the letter—but SPS frequently sent documents intended for Fraser to Martin's address.

recorded with Registry of Deeds, or we need a Quit Claim Deed from one spouse to the other." Id. The December 2 letter goes on to list eight documents that SPS still needed to complete what it referred to as an "Assumption Review." That list includes several documents related to "the Successor in Interest." Id. at 3. For example, SPS stated that it needed the "Government Issued Identification Card [and Social Security Card] for Successor in Interest." Id.

This December 2 letter does not describe Fraser's status with respect to the loan. For example, it does not describe her as a "potential" successor in interest. Rather, it appears to acknowledge that there is already a successor in interest from whom SPS needed certain paperwork to conduct an assumption review. Under the section of the letter entitled "Foreclosure," SPS stated that it had rescheduled the November 30, 2022 foreclosure to February 28, 2023. Id.

Even though this December 2 letter appears to be SPS's response to the Banking Department and is addressed to a Banking Department employee, the last paragraph of the letter is written as though SPS intended the letter for Martin and Fraser: "You or Martin . . . may contact our Ombudsman Department . . . with any additional questions or concerns." Id. The letter ends by explaining that Martin "may also access account information" on the SPS website. Id.

With the threat of foreclosure looming (now scheduled for February 28), Fraser continued her efforts in state court to force Martin to cooperate in her attempts to communicate with SPS about the loan. On February 9, 2023, Fraser filed an "Expedited Motion to Require [Martin to] Cooperate in Modifying Home

7

Loan and in Efforts to Stop Foreclosure." Doc. no. 11-7 at 16. Martin objected. Although it is unclear from the record, it appears that the February 28 foreclosure was rescheduled to June.

Notably, in an email dated March 14, 2023, the SPS Ombudsman Department wrote to Fraser: "We have been attempting to reach you regarding your request for a Successor Verification Review." Doc. no. 24-12 at 2. Although intended for Fraser, the email itself indicates that SPS sent this email to Martin's email address.

4.    Fraser's June 1 & August 25, 2023 "Notice of Error" Letters to SPS

On June 1, 2023, Fraser sent SPS a letter titled "Notice of Error (NOE) and Appeal." Doc. no. 19-1 at 6. In this letter, Fraser cited provisions of RESPA that she believed SPS had violated. She detailed some of her prior efforts to communicate with SPS and find out from SPS precisely what documentation it still needed from her. Fraser explained that another foreclosure sale was scheduled for June 14, 2023, and she requested that SPS cancel it. Fraser alleged that SPS violated RESPA by repeatedly failing to describe what information SPS needed to confirm her interest in the Property. Fraser stated her position plainly: "I cannot provide information when I'm not told the information that is required to be provided." Id. at 7.

With the scheduled foreclosure sale only five days away, on June 9, 2023, Fraser filed another motion to compel Martin to "Execute Authoriz[ation] for Mortgage Loan Information and for other Relief" in the Circuit Court. Doc. no. 11-7

at 16. The Circuit Court granted this motion over Martin's objection. Although it is not clear from the record that SPS responded to Fraser's June 1 "Notice of Error" letter, SPS rescheduled the June 14 foreclosure to September 15, 2023.

On August 25, 2023, Fraser sent SPS another letter titled "Notice of Error (NOE)." Doc. no. 19-1 at 2-5. In this letter, Fraser again cited provisions of RESPA and sought information from SPS. Fraser asserted: "I am a 'borrower' entitled to the protections" of RESPA. Id. at 5. She also pointed out that, just days before, SPS had sent her a "Payoff Statement" that purported to charge her certain fees. Id. at 1. Fraser alleged that charging her these fees violated RESPA, and she demanded that SPS cancel the September 15 foreclosure sale. Once again, Fraser demanded that SPS review her "request to confirm interest in the subject property." Id. at 5.

5.    August 2023: New Hampshire Supreme Court Affirms Divorce Decree

Meanwhile, on August 21, 2023, the New Hampshire Supreme Court affirmed the Circuit Court's divorce decree. See In re Fraser, No. 2022-0504, 2023 WL 5662450, at *4 (N.H. Aug. 21, 2023). The Court found that Martin had "not provided any except the most basic of financial information requested of him by [Fraser] and the Court for most of the time this matter has been pending" and that he had "failed to produce the financial records that the trial court had 'repeatedly ordered' him to disclose." Id. at *1-2. The Court further explained that Martin "had not filed a federal income tax return in several years." Id. at *2.

On September 5, 2023, Fraser emailed a copy of this order to SPS and explained that the New Hampshire Supreme Court had upheld the May 11, 2022

divorce decree which awarded her ownership of the Property. Fraser explained that she was "re-starting the process to be recognized as a successor in interest [and] applying for a loan modification" and directed SPS to send all requests for documents to her, at the Property. Doc. no. 12-3 at 2. Finally, Fraser stated that "[a]ll foreclosure proceedings should be stopped immediately." Id.

SPS did not stop the foreclosure sale scheduled for September 15, 2023. On the day of the scheduled sale, Fraser filed an action in New Hampshire Superior Court to enjoin the foreclosure, along with an ex parte motion asking the Court to delay the foreclosure for at least thirty days.[8] The Superior Court granted Fraser's ex parte motion, enjoining the sale "[p]ending further court order." Doc. no. 4 at 13.[9]

6.    September 2023: SPS Removes Lawsuit to Federal Court

On September 26, 2023, SPS removed that case to this court, and, on March 5, 2024, filed a motion for judgment on the pleadings. On April 19, 2024, while this motion was pending before the court, Fraser submitted a "Mortgage Assistance Application" to SPS.

On April 19, 2024, Fraser's counsel (Attorney Ethan Wood) confirmed (in an email to SPS's counsel, Attorney Donald Seeley) that Fraser had forwarded to SPS copies of: (a) the May 11, 2022 Divorce Decree; (b) the New Hampshire Supreme Court order affirming that decree; and (c) a Mortgage Assistance Application and

---

[8] Fraser filed her initial complaint with the assistance of a friend who appears to work as a banker, not an attorney.

[9] The foreclosure sale has not been rescheduled.

10

Hardship Affidavit dated March 28, 2024. Attorney Wood also attached those documents to his April 19 email. In her Hardship Affidavit, Fraser wrote: "Please review court documents for full explanation [of] divorce which made me successor in interest." Doc. no. 27-2 at 9.

7.      May 2024: SPS Notifies Fraser that it Considers Her a "Successor In Interest"

On May 2, 2024, SPS sent Fraser a letter notifying her that: "SPS has confirmed your identity and interest in the [P]roperty. . . . As a confirmed successor in interest, you may be entitled to receive certain notices and communications about this account." Doc. no. 24-15 at 2. SPS included with that letter a "Confirmed Successor in Interest Acknowledgement Form" for Fraser to sign. Id. at 4.

A few days later, Attorney Seeley emailed Attorney Wood and attached a copy of both the May 2 letter and a letter from SPS to Martin (also dated May 2). In his email to Attorney Wood, Attorney Seeley characterized the letter to Martin as a request for "missing information" from Fraser's Mortgage Assistance Application. Doc. no. 27-4 at 2. The letter to Martin begins: "SPS has reviewed your Assistance Review Application request." Doc. no. 24-16 at 2. Then it goes on to describe documents that SPS still needed to process the application, including signed copies of recent tax returns. Attorney Wood forwarded to Fraser his email correspondence along with a copy of the letter from SPS to Martin. Fraser remained confused as to what documentation SPS required because the letter to Martin did not make clear whether it was requesting documentation from her or from Martin. Nevertheless, Fraser sent SPS documentation and submitted additional applications in October,

11

November, and December of 2024. In response to these applications, SPS continued to send letters to Martin stating that additional information was still needed. See docs. nos. 24-17 through 24-19.

On October 30, 2024, Fraser filed a one-count amended complaint alleging that SPS violated RESPA and Regulation X by failing to adequately respond to her requests for information and by refusing to review her applications for mortgage assistance. Fraser seeks damages to compensate her for the attorney fees she expended litigating against Martin in state court while SPS refused to communicate with her about the loan. She also asks this court to order SPS to review her application for mortgage assistance without requiring information pertaining to Martin, which, she alleges, is impossible for her to obtain.

## DISCUSSION

SPS moves for summary judgment on four grounds: (1) Fraser lacks standing to bring a claim under RESPA because she is not an obligor on the note; (2) the undisputed record establishes as a matter of fact that SPS complied with its obligations under RESPA; (3) SPS is entitled to judgment on Fraser's RESPA claim because she fails to allege actual damages; and (4) the injunctive relief that Fraser seeks is not available under the statute. Although the court agrees that Fraser may not obtain injunctive relief under RESPA, it is not persuaded by SPS's other arguments.

12

I.    Statutory Overview

"RESPA is a consumer protection statute that regulates the real estate settlement process." Benner v. Wells Fargo Bank, N.A., Civ. No. 2:16-cv-00467-NT, 2018 WL 1548683, at *7 (D. Me. Mar. 29, 2018) (quoting Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006)). RESPA and its implementing regulations, Regulation X, establish various obligations that servicers owe to borrowers. See 12 C.F.R. § 1024 et seq. "Borrowers may enforce the provisions of Regulation X pursuant to [12 U.S.C. § 2605(f)], which provides that '[w]hoever fails to comply with any provision of [RESPA] shall be liable to the borrower for each such failure.'" Benner, 2018 WL 1548683, at *7 (alteration in original) (quoting 12 U.S.C. § 2605(f)).

Pertinent here, RESPA provides that "servicers of federally related mortgage loans must respond to 'qualified written request[s]' from borrowers 'for information relating to the servicing' of their loan." Bowen v. Select Portfolio Servicing, Inc., No. 1:23-cv-11231-IT, 2024 WL 3552620, at *1 (D. Mass. July 26, 2024) (alteration in original) (quoting 12 U.S.C. § 2605(e)(1)(A)). When a loan servicer receives a qualified written request,[10] "the servicer is required to 'conduct[ ] an investigation' and either 'provide the borrower with . . . [the] information requested' or 'provide

_____

[10] A qualified written request is "a written correspondence from the borrower to the servicer that includes, or otherwise enables the servicer to identify, the name and account of the borrower, and either: (1) States the reasons the borrower believes the account is in error; or (2) Provides sufficient detail to the servicer regarding information relating to the servicing of the mortgage loan sought by the borrower." 12 C.F.R. § 1024.31.

13

the borrower with a written explanation . . . of why the information requested is unavailable or cannot be obtained by the servicer.'" Id. (alteration in original) (quoting 12 U.S.C. § 2605(e)(2)(C)); see also 12 C.F.R. § 1024.36 (establishing detailed procedures by which servicers must respond to requests for information). Similarly, when a borrower sends a "Notice of Error" to a servicer asserting that the servicer has committed an error relating to the servicing of the borrower's loan, the servicer must either correct the error or determine, after "[c]onducting a reasonable investigation" and providing written notice to the borrower, that no error occurred. 12 C.F.R. § 1024.35(e). Regulation X contains strict time limits by which servicers must respond to both notices of error and requests for information. Id. §§ 1024.35(e)(3); 1024.36(d)(2).

II.      SPS Fails to Establish that Fraser Lacks Standing Under RESPA

SPS first argues that Fraser lacks statutory standing under RESPA because she is not an obligor on the note and is not therefore a "borrower." Only a "borrower" has a cause of action under RESPA. See 12 U.S.C. § 2605(f).[11] While a servicer may only be liable to a "borrower," amendments to Regulation X (effective 2018) define the term "borrower" to include a "confirmed successor in interest." Faria v. Citizens Bank, N.A., 569 F. Supp. 3d 92, 97-98 (D.R.I. 2021) (quoting Amendments to the

---

[11] "Statutory standing" is used herein as shorthand for whether a plaintiff has a cause of action to sue under RESPA. "Arguments concerning the absence of statutory standing, unlike arguments concerning the absence of constitutional standing, do not address a court's subject matter jurisdiction but, rather, address the merits of the plaintiff's claims." Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 44 (1st Cir. 2020).

2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 Fed. Reg. 72160, 72370 (Oct. 19, 2016)) [hereinafter Amendments to the Mortgage Rules Under RESPA]. See 12 C.F.R. § 1024.30(d).

Regulation X contains definitions of both a "successor in interest" and a "confirmed successor in interest."

> *Successor in interest* means a person to whom an ownership interest in a property securing a mortgage loan subject to this subpart is transferred from a borrower, provided that the transfer is: . . . (4) A transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the borrower becomes an owner of the property. . . .
>
> *Confirmed successor in interest* means a successor in interest once a servicer has confirmed the successor in interest's identity and ownership interest in a property that secures a mortgage loan subject to this subpart.

12 C.F.R. § 1024.31. This distinction is critical under RESPA because only "confirmed successors in interest" have the status of borrowers and have statutory standing to sue under RESPA. Faria, 569 F. Supp. 3d at 98.

As support for its argument that Fraser lacks standing as a "borrower" by virtue of her not being an obligor on the note, SPS relies on cases, including one from the undersigned judge, see, e.g., Sharp v. Deutsche Bank Nat. Tr. Co., Civ. No. 14-cv-369-LM, 2015 WL 4771291, at *5 (D.N.H. Aug. 11, 2015), that pre-date the 2018 amendments to Regulation X which expanded the definition of "borrower" to include a "confirmed successor in interest." See Faria, 569 F. Supp. 3d at 97-98.

15

Notably, the Consumer Financial Protection Bureau explained its rationale for including successors-in-interest within the definition of "borrower" for the purposes of Regulation X:

> Successors in interest are a particularly vulnerable group of consumers, who often must make complex financial decisions with limited information during a period of extreme emotional stress. Successors in interest may be more likely than other homeowners to experience a disruption in household income and therefore may be more likely than other homeowners to need loss mitigation to avoid foreclosure.

Amendments to the Mortgage Rules Under RESPA, 81 Fed. Reg. at 72177.

Given these amendments, SPS's reliance on Sharp and other similar cases is misplaced. SPS's belated acknowledgement (in its May 2, 2024 letter—nearly two years after the Circuit Court issued final judgment awarding Fraser title to the Property) that Fraser qualified as a successor in interest establishes—at least as of its May 2 letter—that Fraser's status gives her standing under the statute. See Faria, 569 F. Supp. 3d at 98.

The central dispute in this case is whether Fraser was a "confirmed" successor in interest prior to the May 2 letter. If so, Fraser would therefore obtain standing to sue before that date. See 12 C.F.R. § 1024.30(d) ("A confirmed successor in interest shall be considered a borrower for purposes of . . . this subpart."). This is critical because SPS contends that most (if not all) of Fraser's alleged damages predate the May 2 letter.

SPS argues that Fraser was not a "confirmed successor in interest" before its May 2 letter because—prior to that letter—SPS had not issued any formal or official

16

notification to her that it had "confirmed" her status as a successor in interest. As noted, the regulation defines a "confirmed successor in interest" as follows: "Confirmed successor in interest means a successor in interest once a servicer <u>has confirmed</u> the successor in interest's identity and ownership interest in a property. . . ." <u>Id.</u> § 1024.31 (emphasis added). Thus, for a person to gain the status of a "confirmed" successor in interest, a servicer needs to confirm two facts: (1) the person's identity and (2) the person's interest in the property.

SPS identifies no provision of Regulation X which states that a successor in interest is "confirmed" only after a servicer issues a letter or official pronouncement to the individual. While the verb "confirm" connotes some action on the part of the servicer, it does not suggest that the servicer must convey the confirmation to someone else. <u>See</u> <u>Confirm</u>, Black's Law Dictionary (12th ed. 2024) ("[t]o verify or corroborate," e.g. "confirm that the order was signed"). Were SPS correct about its interpretation of the word "confirmed" in the regulation, servicers could avoid liability under RESPA by willfully refusing to consider a plaintiff's ownership interest despite clear and uncontradicted evidence thereof.

The court finds support for its interpretation of the word "confirmed" in other sections of Regulation X. For example, there is a subsection of Regulation X entitled "Potential successors in interest." 12 C.F.R. § 1024.36(i). This subsubsection requires servicers to respond to written requests for information from people, like Fraser, whose communications indicate they may be a successor in interest. <u>See id.</u> Under § 1024.36(i)(1), when a servicer receives a request for information from a

potential successor in interest, it "shall respond by providing . . . a written description of the documents the servicer reasonably requires <u>to confirm</u> the person's identity and ownership interest in the property. . . ." (emphasis added).[12] Under this provision, a servicer shall explain what documentation it lacks "to confirm" two facts: the person's identity and interest in the property. The two facts allow a servicer "to confirm" a person's status as a successor in interest.

Case law also supports the court's view that whether a person is entitled to the status of a confirmed successor in interest is dependent—not on a pronouncement from the servicer—but on whether the facts of the particular case support the person's entitlement. <u>See, e.g</u>, Barzelis v. Flagstar Bank, 784 F.3d 971, 977-78 (5th Cir. 2015) (reversing summary judgment for lack of standing on widow's RESPA claim because district court failed to account for legal effect of husband's death on widow's status); Shiflett v. Lakeview Loan Servicing, LLC, Civ. No. 2:23-cv-00397-DJC-EFB, 2025 WL 603616, at *7 (E.D. Cal. Feb. 25, 2025) (explaining that "a self-identified successor in interest may rightfully be entitled to the status of a borrower . . . whether or not the loan servicer explicitly conveys 'confirmation' to

---

[12] The regulations also require, as with requests for information from borrowers, that servicers acknowledge within five business days that they have received an inquiry from a potential successor in interest. 12 C.F.R § 1024.36(d), (i)(1). Although it appears that SPS may have failed to abide by its obligations under § 1024.36(i), courts agree that "potential successors in interest" have no private right of action for a servicer's violation of § 1024.36(i). <u>See, e.g.</u>, Shiflett v. Lakeview Loan Servicing, LLC, No. 2:23-cv-00397-DJC-EFB, 2025 WL 603616, at *7 (E.D. Cal. Feb. 25, 2025). It cannot be the case, however, that RESPA enables a servicer to ignore this section of the regulation so that the servicer can thereby prevent a potential successor in interest from gaining standing to sue under RESPA.

the successor in interest"); Nolan v. U.S. Bank Nat'l Ass'n, No. 2:23-cv-1443-RMG, 2024 WL 1838602, at *4 (D.S.C. April 10, 2024), report and recommendation adopted, 2024 WL 1836574 (D.S.C. Apr. 26, 2024) (denying motion to dismiss for lack of standing because plaintiff "may meet [the] definition" of confirmed successor in interest based on allegation that her deceased mother had deeded her the mortgaged property); Weber v. Wells Fargo Bank, N.A., No. 3:20-cv-48, 2021 WL 833949, at *7 (N.D. W. Va. 2021) (holding that "undisputed fact" that plaintiff inherited her spouse's entire estate when he died intestate "confirms Plaintiff as a successor in interest").[13] But see Mauk v. Nationstar Mortg., LLC, Civ. No. 5:25–cv–00630, 2025 WL 3041845, at *6 (N.D. Ohio Oct. 31, 2025) ("[C]onfirmation [as a successor in in interest] cannot be implied or inferred; it must be explicitly and unambiguously communicated from the servicer to the party seeking confirmed status.").

---

[13] There are also cases where courts have permitted successor-in-interest claims to survive a motion to dismiss where there is evidence that the loan servicer "implicitly" acknowledged the successor in interest's status. See Shiflett, 2025 WL 603616, at *9 (declining to dismiss where allegations that servicer "implicitly acknowledged" plaintiff's status as a confirmed successor in interest by requiring her to pay interest, late charges, and foreclosure fees); Faria, 569 F. Supp. 3d at 98 (declining to dismiss where allegations that the servicer had "treated" plaintiffs as confirmed successors in interest by mailing them notices of mediation and sale). Here, there is evidence that SPS implicitly acknowledged Fraser's status as a successor in interest before SPS sent its May 2, 2024 letter. For example, there is evidence that, on August 17, 2023, SPS sent Fraser a "payoff statement" which purported to charge Fraser certain fees. This evidence provides further support for Fraser's arguments that SPS fell short in its obligations to communicate with her in a clear manner about her status.

This court finds the reasoning of the <u>Shiflett</u> line of cases persuasive. They stand for the principle that one may qualify as a confirmed successor in interest by appearing to have lawful right to succession. Were this not the case, servicers could confirm a successor in interest's identity and ownership interest in a property but simply delay sending a confirmation letter.  See Shiflett, 2025 WL 603616, at *8 (explaining that denial of standing to a RESPA plaintiff credibly alleging to be a successor in interest because the servicer had failed to notify her of the confirmation would impose "a harsh and counter-intuitive consequence").

Were the court to construe the regulations as SPS urges, servicers would essentially be able to choose when a confirmed (though not yet notified) successor in interest could bring a cause of action under RESPA. In the absence of language stating that a servicer must send notice of confirmation in order for a successor in interest to be considered "confirmed" under § 1024.31, the court declines SPS's invitation to interpret the regulations in a manner that would immunize from liability those servicers that flout their obligations under RESPA.[14]

---

[14] The court does not, therefore, agree with <u>Mauk</u> that the statute only entitles a successor in interest who has received "unambiguous validation" of her status from a servicer to then sue that servicer under RESPA. 2025 WL 3041845, at *6. While that requirement makes it easier for a district court to discern a "bright-line" in these cases, <u>see</u> <u>id.</u> at *7, such a result runs counter to the purposes of RESPA and the language in Regulation X, including that which requires servicers to "treat the potential successor in interest as a borrower" for purposes of responding to their inquiries within the 10 to 30-day time limits in the regulations. 12 C.F.R. § 1024.36(c)-(i).

While the record in this case contains material factual disputes about the precise timing of Fraser's entitlement to the status of "confirmed successor in interest," the undisputed facts show that Fraser had a rightful claim to succession well before May 2024. It is undisputed that the Circuit Court awarded her ownership of the Property in May 2022, and that Fraser sent a copy of the decree to SPS by October 31, 2022. Thus, a reasonable jury could conclude that she satisfied the definition of a confirmed successor in interest by at least October 31, 2022.

In sum, SPS's request for a ruling in its favor on the question of Fraser's statutory standing falls well short of the mark and is denied.

III.    SPS Fails to Show that Undisputed Facts Entitle It to a Ruling in Its Favor on the Merits of Fraser's Claim

A.    Requests for Information and Notices of Error

SPS next argues that Fraser's claim fails as a matter of fact because the record indisputably shows that SPS complied with its obligations under the statute. The court disagrees. As described above, RESPA provides that servicers must respond to borrowers' qualified written requests for information relating to their loan servicing. See 12 U.S.C. § 2605(e)(1)(A). Sections 1024.35 and 1024.36 of Regulation X detail the procedures that servicers must follow when responding to either a "notice of error" or a "request for information" from a borrower. Generally speaking, both sections require servicers to timely acknowledge receipt of a borrower's qualified written request (within five business days) and to substantively respond by either (1) correcting the error or providing the information requested or

(2) conducting a reasonable investigation into the error or a reasonable search for the requested information and providing the borrower with an explanation of why the servicer has determined no error occurred or why requested information is unavailable. See 12 C.F.R. §§ 1024.35; 1024.36.

SPS cites two letters in the record as conclusively establishing its compliance with its obligation to respond to Fraser's requests for information: one dated September 12, 2022 (doc. no. 24-10) and another dated December 2, 2022 (doc. no. 24-11). SPS contends that these two letters show that it provided Fraser the information she needed "to become a successor in interest and assume the payment obligations under the loan" and that, despite having provided Fraser with this information, she failed to follow the instructions. See doc. no. 24-1 at 2. SPS's reliance on these letters is unavailing. Both of them reveal disputes of material fact about precisely what information SPS still needed to confirm Fraser as a successor in interest, and in the case of the second letter, whether it was even sent to Fraser.

With respect to the September 12 letter, Fraser argues that SPS failed to make clear what documents SPS still needed. SPS wrote the September 12 letter in response to a letter that SPS received from Fraser on August 29—a few weeks after the Circuit Court had awarded her complete ownership of the Property in a final decree. Although addressed to Fraser, the September 12 letter did not reference her ownership of the Property and instead provided her with a generic list of exemplar documents that would suffice to show an ownership interest in the Property. Only one of those exemplars potentially applied to her: "a copy of the relevant deed

showing a current interest in the property." Doc. no. 24-10 at 4. Reading the record generously to Fraser, a rational jury could conclude that the September 12 letter (which appears to be a form letter) did not clarify for her what documentation SPS still needed from her. And, in light of the generic nature of the letter and her prior communications with SPS, a jury could view as reasonable Fraser's assumption that SPS knew that Fraser was on the deed since SPS knew she had signed the mortgage but not the note. In short, there is enough in the record for a reasonable juror to conclude that SPS's September 12 letter did not "provid[e] the borrower with the requested information." 12 C.F.R. § 1024.36(d)(1)(i).

SPS next relies on its December 2 letter to Fraser to argue that the record contains undisputed evidence of its compliance with RESPA. There are several problems with SPS's reliance on the December 2 letter. First, SPS wrote the December 2 letter in response to Fraser's letter dated November 17—which is Fraser's complaint to the New Hampshire Banking Department about SPS's poor communication with her. The December 2 letter does not, as SPS argues, establish its entitlement to a ruling in its favor on the question of its compliance with RESPA. Read favorably to Fraser, the December 2 letter shows that, as of that date, Fraser is does not understand why SPS still refuses to communicate with her about the Property. Second, Fraser disputes having received a copy of that letter. The letter appears to be addressed not to Fraser but to the New Hampshire Banking

23

Department.[15] Thus, whether Fraser received the December 2 letter is an unresolved dispute of material fact. Finally, and most important, the December 2 letter establishes that, as of that date, SPS knew Fraser's identity and had in its possession a copy of the final divorce decree. This raises a dispute of material fact about why SPS did not—as of the date of the December 2 letter—have sufficient information to confirm that Fraser was a successor in interest.

In addition to the material factual disputes surrounding the September 12 and December 2 letters, there are other reasons that SPS is not entitled to judgment as a matter of law. There is no evidence in the record that SPS responded to Fraser's June 1 and August 25, 2023 "Notice of Error" letters. In the June 1 letter, Fraser detailed SPS's continuing failure to respond to her requests for information and to describe precisely what documents SPS still needed. In the August 25 letter, Fraser asked SPS why it was charging her for costs and fees in a "Payoff Statement" that SPS had sent to her. Fraser also reiterated in the August 25 letter her request for SPS to confirm her interest in the Property.

With respect to the June 1 letter, SPS claims that no response to that letter was required because the letter was duplicative of Fraser's October 31, 2022 letter—which SPS claims it had already responded to in its December 2, 2022 letter.

---

[15] As noted, one of Fraser's central complaints about SPS was that it frequently mailed communications intended for her to Martin, with whom she was in a contentious divorce. It is undisputed that Martin repeatedly refused to communicate with Fraser about the mortgage and would not assist in her efforts to avoid foreclosure. Fraser's claims in this regard are supported by record evidence. See, e.g., doc. no. 24-12.

This argument assumes that SPS actually sent the December 2 letter to Fraser, a fact that is disputed. As noted, the December 2 letter was not even addressed to Fraser; it was addressed to the New Hampshire Banking Department. What is more, Regulation X makes clear that if a servicer believes that it need not respond to a notice of error or a request for information because it is duplicative of a previous request, it must notify the borrower that it has made such a determination and explain the basis for it. 12 C.F.R. §§ 1024.35(g)(2); 1024.36(f)(2). SPS points to nothing in the record suggesting that it gave such notice. And, finally, SPS failed to argue that its lack of response to Fraser's August 25 letter complied with RESPA.

B.      Loss Mitigation

SPS also claims that undisputed facts establish that it complied with § 1024.41 in handling Fraser's applications for mortgage assistance, or "loss mitigation applications" in the terms of the regulations. Here, again, the court disagrees.

Section 1024.41 lays out various steps that servicers must follow when they receive a loss mitigation application from a borrower. Among other requirements, servicers must review an application received forty-five days before a foreclosure sale and notify the borrower in writing within five business days whether the servicer deemed the application complete or incomplete. Id. § 1024.41(b)(2)(i). If a servicer deems an application incomplete, the servicer must "state the additional documents and information the borrower must submit to make the loss mitigation application complete." Id. § 1024.41(b)(2)(i)(B). The servicer must also "exercise

reasonable diligence in obtaining documents and information to complete a loss mitigation application." Id. § 1024.41(b)(1). If a servicer receives a complete loss mitigation application more than thirty-seven days before a foreclosure sale, the servicer must "[e]valuate the borrower for all loss mitigation options available to the borrower." Id. § 1024.41(c)(1), (i).

SPS generally claims that it lawfully "sought routine financial documents and information" from Fraser and that Fraser never submitted a complete application triggering SPS's obligation to evaluate it. Doc. no. 24-1 at 13-14. However, SPS's argument ignores the regulation's requirement that servicers "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1). While § 1024.41 does not define what it means to exercise reasonable diligence, courts have concluded that a servicer may fail to exercise reasonable diligence if it "repeatedly requests documents it already possesses or documents that it knows or should know are not required to complete the borrower's application." Benner, 2018 WL 1548683, at *11 (citing Dionne v. Fed. Nat'l Mortg. Ass'n, Civ. No. 15-cv-56-LM, 2016 WL 6892465, at *6 (D.N.H. Nov. 21, 2016)); accord DeCotis v. Specialized Loan Servicing LLC, 642 F. Supp. 3d 181, 186-87 (D. Mass. 2022); Schoen v. Bank of Am., N.A., No. 2:17-cv-648, 2019 WL 590882, at *7 (S.D. Ohio Feb. 13, 2019). In Benner, Judge Torresen explained that a servicer may also fail to exercise reasonable diligence by making repeated "potentially confusing" requests for information. 2018 WL 1548683, at *12.

Here, a jury could conclude that SPS failed to exercise reasonable diligence when it repeatedly sent document requests to Martin (at a different address from Fraser) and did so even after Fraser made clear in a 2023 email to SPS that all requests for documents should be sent to her at the Property. While the record reveals that Attorney Seeley forwarded some of these requests to Attorney Wood, a reasonable juror could still conclude that the letters requesting information from Martin were quite confusing and requested documents that SPS knew or should have known were not required.[16] See id. at *11.

For example, on May 8, 2024, Attorney Seeley emailed Attorney Wood a May 2, 2024 letter (addressed to Martin) which requested documentation to complete Martin's application. The letter explained that SPS was missing documentation including: "A signed copy of the most recent year's filed federal tax return for each customer." Doc. no. 24-30 at 11. A reasonable juror could ask: Who is "each customer"? Does Fraser have to submit only her tax returns, or does she have to procure signed and dated tax returns from Martin, her ex-husband with a years-long track record of resisting requests (and even court orders) for information? Read favorably to her, the record supports Fraser's ongoing confusion with respect to the documents SPS required. What is more, when Fraser sought clarification, she

---

[16] Citing comments from the Consumer Financial Protection Bureau, SPS argues that it is entitled to discretion with respect to the documentation it requires to consider an application complete. It does not attempt to argue, however, that this discretion applies to document requests sent directly to Martin. In any event, even granting that servicers have discretion as to what documents they request, it does not absolve them of the responsibility to "exercise reasonable diligence in obtaining [the] documents and information" they require. 12 C.F.R. § 1024.41(b)(1).

claims that it took months to ascertain from SPS that it sought documents from both her and Martin. A reasonable juror could conclude that SPS failed to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1).

For all of these reasons, the court is not persuaded that the record reveals SPS's entitlement to judgment as a matter of law on Fraser's RESPA claim.

IV.     Fraser Alleges Damages in the Form of Costs and Attorney Fees Caused by SPS's Alleged Violations

SPS next argues that Fraser does not allege actual, recoverable damages. "Damages are 'an essential element' of a RESPA claim." Benner, 2018 WL 1548683, at *9 (quoting Lage v. Ocwen Loan Servicing LLC, 839 F.3d 1003, 1011 (11th Cir. 2016)). RESPA allows plaintiffs to recover "any actual damages to the borrower" and "any additional damages, as the court may allow [up to $2,000], in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1). "In the case of actual damages, the plaintiff's harm must have accrued 'as a result of the [defendant's] failure' to comply with the Act." Benner, 2018 WL 1548683, at *9 (alteration in original) (quoting id.). As to the kind of damages available under RESPA, attorney fees may be recoverable as actual damages "if they are not incurred in connection with bringing a suit under the statute." McGahey v. Fed. Nat'l Mortg. Ass'n, 266 F. Supp. 3d 421, 441 (D. Me. 2017).

SPS argues that it is entitled to summary judgment because Fraser has not alleged damages that are "causally related" to SPS's alleged violations. Doc. no. 24-1 at 15. The record evidence does not support this argument. For example, Fraser

alleges that SPS's intransigence caused her to incur unnecessary costs and attorney fees in her divorce case—in that she filed motions to force Martin (as the obligor on the note) to take action to permit her to speak to SPS. The summary judgment record is sufficient for a reasonable jury to conclude that Fraser incurred these costs "as a result of" SPS's alleged violations.[17] Benner, 2018 WL 1548683, at *9 (quoting 12 U.S.C. § 2605(f)(1)).

SPS attempts to cast Fraser's litigation against Martin (to obtain loan information/permission to speak with SPS) as predating her October 31, 2022, letter—what it describes as Fraser's first qualified written request for information. The record reveals, however, that Fraser filed (and litigated) at least two motions to compel Martin to allow her to speak with SPS after this 2022 request for

---

[17] The RESPA regulations contain commentary to assist servicers in understanding their obligations to persons who qualify as "potential" successors in interest. See generally 12 C.F.R. pt. 1024, supp. I, § 36(i) cmt. 1 (explaining that servicers are required to respond swiftly to "written requests that indicate the person may be a successor in interest includ[ing], without limitation, a written statement . . . indicating that there has been a transfer of ownership or of an ownership interest in the property to the person," a divorce, separation, or even just "a loss mitigation application") (emphasis added). Here, the undisputed facts show that Fraser may have been a "potential successor in interest" early on in this case. The requirement is unambiguous: servicers must respond promptly and with clarity to requests from persons like Fraser who may qualify as a successor in interest. And, the time limits to respond may be shorter "[d]epending on the facts and circumstances of the request." Id. § 36(i) cmt. 2. While this regulation does not provide a cause of action for persons like Fraser, it may be relevant on the question of damages under § 2605(f)(1).

information. It is for the jury to decide whether Fraser's claimed damages occurred as a result of SPS's alleged RESPA violations.[18]

V        Fraser Is Not Entitled to Equitable Relief Under RESPA

As noted above, Fraser asks this court to order SPS to allow her to submit a loss mitigation application and to review it without information from Martin. SPS argues that Fraser is not entitled to equitable relief under RESPA. Although the court finds Fraser's request for SPS to review her loss mitigation application eminently reasonable, the case law does not support Fraser's assertion that this court can order SPS to do so under the statute.[19] See, e.g., Gonzalez v. Real Time Resols., Inc., Civ. No. 19-cv-297-JL, 2019 WL 7596277, at *6 (D.N.H. Aug. 29, 2019) ("[E]quitable relief is not available under RESPA." (citing Bulpitt v. Carrington Mortg. Servs., LLC, Civ. No. 16-cv-399-JD, 2017 WL 2937576, at *4 (D.N.H. July 10, 2017))). Thus, SPS's motion for summary judgment is granted in part to the extent that Fraser is not entitled to equitable relief under RESPA.

---

[18] To the extent SPS argues that the attorney fees Fraser seeks are not compensable as actual damages under RESPA, this claim fails too. See, e.g., Carilus v. United Wholesale Mortg., LLC, No. 5:24-cv-546-JA-PRL, 2025 WL 2917135, at *5 (M.D. Fla. Oct. 14, 2025) (holding plaintiff in RESPA case entitled to actual damages arising from "alleged photocopying costs, postage costs, and reasonable attorney's fees incurred after [Defendant's] incomplete or insufficient response" to inquiries) (alteration in original). As RESPA permits prevailing parties to seek attorney fees, 12 U.S.C. § 2605(f)(3), the court does not understand Fraser to be seeking damages based on attorney fees for bringing the present lawsuit.

[19] In her objection, Fraser briefly suggests that SPS has violated the implied covenant of good faith and fair dealing. However, Fraser does not develop this argument and cites no authority to support it. Nor has she brought a contract or quasi-contract claim against SPS.

**CONCLUSION**

SPS's motion for summary judgment (doc. no. 24) is granted in part and denied in part as set forth herein. The parties shall meet and confer and, on or before thirty days from the date of this order, file proposed trial date(s).

SO ORDERED.

                                        _____
Landya McCafferty
United States District Judge

March 16, 2026

cc:     Counsel of Record